# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| RANCO INDUSTRIES, INC., <br> *Plaintiff*, | § § § | |
| v. | § § | CIVIL ACTION H-10-5214 |
| BOSTON FLOOR MATS & LAMONT TROY, <br> *Defendants*. | § § § | |

## CIVIL CONTEMPT ORDER

Plaintiff Ranco Industries, Inc. ("plaintiff") filed a Motion for Order of Civil Contempt (Dkt. 13) against defendant Lamont Troy ("Troy"). Troy has not complied with the court's Permanent Injunction Order (Dkt. 10), and has taken steps to affirmatively violate the Permanent Injunction. Accordingly, the court makes the following findings of fact, conclusions of law, and GRANTS the Motion for Order of Civil Contempt as follows:[1]

**A.   Findings of Fact**

1.   On December 29, 2010, plaintiff filed its Original Complaint (the "complaint"). The complaint alleged claims against defendants Boston Floor Mats & Lamont Troy ("defendants") for copyright infringement and for two violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §§ 1202(a) & 1202(b). *See* Dkt. 1.

2.   On January 20, 2011, defendants were served with summons and a copy of the complaint via personal service through a process server. *See* Dkts. 7 & 8. Defendants therefore had

---

[1] To the extent any Finding of Fact reflects a legal conclusion, it shall to that extent be deemed a Conclusion of Law, and to the extent any Conclusion of Law reflects a factual finding, it shall to that extent be deemed a Finding of Fact. Citations to the Record are not intended to imply that the cited portion represents the only support for the court's finding.

until February 10, 2011 to answer or otherwise respond to the complaint. FED. R. CIV. P. 12(a). Defendants did not appear or otherwise respond to the complaint.

3.      On March 31, 2011, the court entered default against defendants. *See* Dkt. 10. The court granted plaintiff's motion for default judgment as to liability for its claims against defendants for copyright infringement and two DMCA violations. *Id.* The court also granted the application for permanent injunction and "enjoined [defendants] from continuing to operate the website www.bostonfloormats.com ["BFM website"] unless and until all copyright infringing material is removed from the website or defendants have received appropriate permission from the copyright owner to use the original material and arrangement of products from Ranco's website." *Id.* at 5.

4.      On May 18, 2011, the court entered an Order and Final Judgment. *See* Dkt. 12. In addition to the permanent injunction, the Final Judgment awarded plaintiff $5,000 in statutory damages, $440.00 in costs, and $5,287.50 in attorneys' fees. *Id.* No appeal was filed.

5.      After the Order and Final Judgment was entered, plaintiff served a copy of the Default Judgment and Order and Final Judgment on Troy. *See* Exhibit 1 (Beik Letter). In a letter dated June 29, 2011, plaintiff demanded that Troy comply with the court's orders. *Id*. at 1. The documents were served via U.S. Mail to Lamont Troy, P.O. Box 2263, Worcester, MA 01613, via email to lamont@bostonfloormats.com, and facsimile to (508) 752-1510. *Id*. The foregoing address, email address, and fax number are listed on the BFM website. *See* Exhibit 2; *see also* Exhibit 3 (June 14, 2011 Beik Email to lamont@bostonfloormats.com).

6.      Plaintiff received no response. *See* Exhibit 4 at 2 ¶ 4 (Beik Affidavit). No payment has been received from Troy to satisfy the monetary portion of the Order and Final Judgment. *Id.*

8. On June 30, 2011, plaintiff sent a DMCA takedown letter to FastDomain, Inc. ("FastDomain"). *See* Exhibit 5 (Beik Letter to FastDomain, Inc.). FastDomain "hosted" the BFM website. *Id.* at 3. In the letter, plaintiff provided notice of the court's orders and requested, pursuant to the DMCA, that FastDomain disable access to and/or remove the BFM website. *Id.* at 3–5.

9. On July 6, 2011, FastDomain's legal department contacted plaintiff's counsel via email to confirm that the requested actions were taken. *See* Exhibit 6 (FastDomain email to Beik). Plaintiff also confirmed that the BFM website was no longer "live" on the Internet. *See* Exhibit 4 at 3 ¶ 7. Troy thus received notice of the Permanent Injunction.

10. Around May 2012, plaintiff discovered that Troy had re-launched the BFM website. *See* Exhibit 7 (BFM website "Home Page"). Troy's website was re-launched without making any changes to the content of the BFM website that was ordered by the court. For example, Troy has continued to use the exact arrangement of plaintiff's Product Categories on the BFM website. *See, e.g.*, Exhibit 9 (photographic product comparisons between the websites). Troy has also continued to use verbatim text and *identical* product photographs from plaintiff's website. *Id.*

11. The re-launched website, which contains infringing material prohibited by the court's permanent injunction, demonstrates that Troy has knowingly disregarded the court's orders. Troy continues to infringe upon plaintiff's copyright through the operation of the BFM website, he has not removed plaintiff's copyrighted material from the BFM website, and he has not received permission from plaintiff to use its copyrighted materials on the BFM website.

12. Plaintiff moved for contempt and requested the court to order Troy to pay $500 per day until he proves he is in compliance with the court's orders, and order Troy to pay plaintiff's reasonable and necessary attorneys' fees for enforcing the court's permanent injunction. Dkt. 13.

13. On July 27, 2012, the court issued an order for Troy to show cause by written submission within 30 days why an order of civil contempt should not be issued. Dkt. 14. Troy was served with the show cause order on August 27, 2012, Dkt. 15, and more than 30 days have passed since Troy was served. Troy has not filed a written submission or otherwise responded to the court's show cause order.

**B.     Conclusions of Law**

1. The court possesses the inherent authority to enforce its own injunctive decrees through civil contempt orders and may do so even after final judgment. *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985); *Brown v. Braddick*, 595 F.2d 961, 965 (5th Cir. 1979); *Prater v. Commerce Equities Mgmt. Co.*, H-07-2349, 2009 WL 172826, at *1 (S.D. Tex. 2009).

2. "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995). A movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence: (1) that a court order was in effect; (2) the order required certain conduct by the respondent; and (3) the respondent failed to comply with the court's order. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 581–82 (5th Cir. 2005); *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th

Cir. 2004); *Travelhost*, 68 F.3d at 961; *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, No. H-07-3167, 2007 WL 1643211, at *5 (S.D. Tex. June 4, 2007) (Rosenthal, J.). The clear and convincing evidence standard is higher than the "preponderance of the evidence" standard, common in civil cases, but not as high as "beyond a reasonable doubt." *Travelhost*, 68 F.3d at 961 (citing *United States v. Rizzo,* 539 F.2d 458, 465 (5th Cir. 1976)); *Symetra*, 2007 WL 1643211, at *5. Clear and convincing evidence, in the context of a contempt proceeding, is that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case. *Travelhost*, 68 F.3d at 961; *Symetra*, 2007 WL 1643211, at *5.

      3.     To support a contempt finding in the context of an injunction, the order must set out "definite and specific" mandates that the defendant violated. FED. R. CIV. P. 65; *Travelhost*, 68 F.3d at 961; *Symetra*, 2007 WL 1643211, at *6. Moreover, the contemptuous conduct at issue need not be willful so long as the contemnor actually failed to comply with the court's order. *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000); *Symetra*, 2007 WL 1643211, at *5.

      4.     There are two types of contempt — civil and criminal. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–27, 114 S. Ct. 2552 (1994). Criminal contempt is a crime "in the ordinary sense," and thus all the constitutional rights afforded criminal defendants must be provided to those charged with criminal contempt. *Id.* at 826.

5.      By contrast, "[j]udicial sanctions in civil contempt proceedings [are] employed for either or both of two purposes: to coerce the defendant into compliance with the court's order [or] to compensate the complainant for losses sustained." *Am. Airlines*, 228 F.3d at 585 (internal quotation marks omitted).  In selecting the appropriate contempt sanction, "a court is obliged to use the least possible power adequate to the end proposed." *Spallone v. United States*, 493 U.S. 265, 276, 110 S. Ct. 625 (1990).  If and when the court sets a prospective per diem fine to coerce compliance with an order, the court should consider the following factors before setting the fine amount: (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order.  *Lamar Fin. Corp. v. Adams*, 918 F.2d  564, 567 (5th Cir. 1990) (affirming prospective per diem fine of $500 payable to court until contemnor produced certain documents).  A coercive fine may be imposed so long as the contemnor "is afforded an opportunity to purge," i.e., a "subsequent opportunity to reduce or avoid the fine through compliance." *Bagwell*, 512 U.S. at 829.

6.      On March 31, 2011, the court entered a specific and definite permanent injunction order that prohibits Troy from: "continuing to operate the ["BFM website"] unless and until all copyright infringing material is removed from the website or defendants have received appropriate permission from the copyright owner to use the original material and arrangement of products from Ranco's website." *See* Dkt. 10 at 5.  Although Troy had actual knowledge of the foregoing order, he did not comply with that order.  Troy affirmatively took steps so that he could continue to violate

the permanent injunction, and those actions support a finding that Troy is in civil contempt of the court's permanent injunction.

7. Based on the evidence provided to the court, the applicable law and facts as found above, the court hereby ORDERS Troy in civil contempt of court.

8. In arriving at a proper per diem fine, the court must consider the four factors discussed above. First, with regard to Troy's harm from noncompliance, it is clear that his continued acts of infringement in violation of this court's orders constitute unlawful competition with the plaintiff and pose substantial, ongoing harm. Second, as to the probable effectiveness of a sanction, a robust, per diem fine will likely prompt Troy to comply with the court's permanent injunction and take down the infringing content from the BFM website. As to the third factor, the financial resources of the contemnor, the court cannot make any findings regarding this factor because Troy has not participated in this litigation or contempt proceeding. Finally, the court finds that Troy's continued infringement is willful and without excuse, particularly based on plaintiff's evidence indicating that Troy is well aware of this court's previous order.

9. After weighing the above factors, the court finds that a $100.00 per diem fine is appropriate until Troy proves he is in compliance with the court's order.

10. As to attorneys' fees, Troy's acts of contempt have directly caused plaintiff to incur attorneys' fees in the amount of $5,637.50. Ex. 4 at 3–4 ¶ 10. The court finds this amount to have been reasonable, necessary, and incurred to enforce the court's permanent injunction.

C.     Conclusion

The court has determined that Troy is in civil contempt of court. The court ORDERS that Troy shall pay a $100.00 fine per day until he proves he is in compliance with the court's permanent injunction. The plaintiff shall serve Troy with this civil contempt order pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, and the fines shall begin to accrue 14 days after plaintiff files proof of service of this order. The court further ORDERS Troy to pay plaintiff's reasonable and necessary attorneys' fees in the amount of $5,637.50. Lastly, the court ORDERS that plaintiff shall file a status report, sixty days after contempt fines begin to accrue, which informs the court of the degree of Troy's compliance with the court's orders. If Troy has not complied with the court's permanent injunction by that time, Plaintiff may move for additional civil contempt sanctions, including imprisonment. *Bagwell*, 512 U.S. at 828 (explaining that the "paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor ***indefinitely* [in prison]** until he complies" with the court's orders) (emphasis added).

Signed at Houston, Texas on October 2, 2012.

_____
Gray H. Miller
United States District Judge